OFFICE & PROFESSIONAL EM-
PLOYEES INTERNATIONAL UN-
ION, AFL–CIO and Office & Pro-
fessional Employees International
Union, AFL–CIO Local 129, Peti-
tioners–Appellants,

v.

SEA–LAND SERVICE, INC.,
Respondent–Appellee.

Docket No. 98–7782.

United States Court of Appeals,
Second Circuit.

Argued March 24, 1999.

Decided April 6, 2000.

Joshua E. Bienstock, Garden City, NY (Anne Lantz Brown, Lilly & Bienstock, Garden City, NY, of counsel), for Petitioners–Appellants.

Robert J. Attaway, New York, NY (Jennifer M. Crook, Lambos & Junge, New York, NY, of counsel), for Respondent–Appellee.

Before: PARKER and POOLER, Circuit Judges, and WEXLER *, District Judge.

PARKER, Circuit Judge:

Appellants Office & Professional Employees International Union, AFL–CIO and Office & Professional Employees International Union, AFL–CIO Local 129 ("OPEIU") appeal from the order of the United States District Court for the Southern District of New York (Robert P. Patterson, Jr., *Judge*) entered May 5, 1998, denying OPEIU's motion to enforce the judgment pursuant to Fed.R.Civ.P. 70.

This case involves a jurisdictional labor dispute among two labor unions and a company that employs members of both unions. As we use the term, a jurisdictional labor dispute arises when two or more unions claim, under their respective collective bargaining agreements ("CBAs"), the right to perform the same work assignment. *See Transportation–Communication Employees Union v. Union Pac. R.R.*, 385 U.S. 157, 161, 87 S.Ct. 369, 17 L.Ed.2d 264 (1966). Here, OPEIU is one of the labor unions, while the other union, International Longshoreman's Association ("ILA"), is not a party. Respondent-appellee Sea–Land Service, Inc. ("Sea–Land") is the employer. The work assignment at issue concerns work at a facility at the Port of Houston in Houston, Texas.

The issue presented on appeal derives from the issuance of contradictory arbitration awards and the entry of contradictory judgments in two different federal district courts. The first arbitration award followed two-way ("bipartite") arbitration in New York between OPEIU and Sea–Land, and resulted in OPEIU being awarded a portion of the work assignment at issue. On OPEIU's petition, the federal district court for the Southern District of New York (the "New York court") entered a final judgment confirming the award.

Subsequent to these events, ILA and Sea–Land submitted to bipartite arbitration in Texas, after which ILA was awarded *all* of the work assignment, including that portion previously awarded to OPEIU in New York. When ILA petitioned to confirm the Texas award in federal district court for the Southern District of Texas (the "Texas court"), the Texas court disregarded both arbitration awards, as well as the Southern District of New York judgment. The Texas court then ordered all three parties to participate in tripartite arbitration in Texas. ILA prevailed in that proceeding, and was awarded all of the work assignment. Following that award, the Texas court entered judgment confirming the tripartite award.

Meanwhile, while the litigation was proceeding in Texas, OPEIU returned to the Southern District of New York and made a motion pursuant to Fed.R.Civ.P. 70 to enforce the New York judgment confirming the bipartite award that favored OPEIU. By the time the New York court came to rule on that motion, the Texas court had already entered judgment in its case awarding the work to ILA. The New York

---

* The Honorable Leonard D. Wexler, of the United States District Court for the Eastern District of New York, sitting by designation.

court was thus faced with two contradictory federal district court judgments, namely its own (which awarded a portion of the work to OPEIU) and the Texas judgment (which awarded all of the work to ILA). Finding that ILA was a necessary party that had been absent from the New York action, the New York court denied the Rule 70 motion, thereby refusing to give continued effect to the New York judgment. OPEIU now appeals from that denial. For the reasons set forth in the discussion that follows, we affirm.

## I. BACKGROUND

Sea–Land is a cargo carrier operating out of the Port of Houston. Sea–Land employs members of both OPEIU and ILA. Both unions have CBAs with Sea–Land that call for resolution of work assignment disputes through arbitration. OPEIU's CBA contains no provision requiring OPEIU to participate in tripartite arbitration.

The dispute in this case and the Texas litigation concerns the distribution of work at the entrance-gate of the Houston facility. Gate employees track the flow of traffic and cargo in and out of the facility. Prior to 1992, there were five full-time gate workers, three from ILA and two from OPEIU. In 1992, a new computer system was implemented, resulting in the displacement of at least one of OPEIU's workers by an ILA worker.

### A. *Arbitration Between Sea–Land and OPEIU*

OPEIU initiated a grievance on July 9, 1992. ILA was not a party to the subsequent arbitration and did not participate in it in any way. Indeed, in reaching a determination, the arbitrator incorporated language from a prior, related award to the effect that, "[t]he Arbitrator is not empowered to review the ILA collective bargaining agreement. In short, the issue is not

whether ILA employees or OPEIU employees are properly assigned certain work but simply whether work formerly performed by OPEIU employees was taken away from them to be performed by others." The only question presented to the arbitrator was whether OPEIU's work had been reassigned to ILA (a violation of OPEIU's CBA) or simply eliminated altogether (not a violation of OPEIU's CBA).

The arbitrator issued a final ruling on May 5, 1995, finding that there had been a reassignment in violation of OPEIU's CBA. The arbitrator ordered that the gate positions be split evenly between ILA and OPEIU, with any odd position assigned to ILA. This ruling applied not only to present work, but also to "increases or decreases" in future personnel at the gate. The immediate result was the posting of two additional OPEIU workers at the gate.

OPEIU petitioned in the Southern District of New York to confirm that arbitration award, and on June 28, 1996, final judgment was entered confirming the award. However, after entry of judgment, the parties continued to dispute the matter. On April 3, 1997, they entered a settlement agreement and "stipulation of compliance" to resolve those disputes. Among other resolutions, the parties reaffirmed their duties to comply with the arbitrator's award. On April 16, 1997, the New York court "so ordered" the stipulation of compliance. A separate judgment was not entered, and the case was marked closed.

### B. *Arbitration Between Sea–Land and ILA*

Meanwhile, in March of 1997, ILA pursued two grievances against Sea–Land.[1] In the first grievance, ILA claimed that it had the right to perform the gate work (the same gate work claimed by OPEIU)

---

1. The parties have not disputed ILA's contention in the Texas litigation that these grievances were the legal equivalent of arbitration, and we have not considered the matter further.

pursuant to a CBA between ILA and Sea–Land. In the second grievance, ILA claimed that the CBA entitled it to be the sole performer of the work for a new client, Maersk, Inc., which was set to begin at the port "in the near future." Sea–Land opposed the first grievance on the ground that a "court decision" (i.e., the New York judgment) had "forced" reassignment of the work. Sea–Land does not appear to have opposed the second grievance. OPEIU did not receive notice of these grievances and did not participate in the hearings.

On March 4, 1997, ILA prevailed before the grievance committee on both grievances. The committee found that all the disputed work could be performed only by ILA workers. The March 4, 1997, date is notable because on April 3, 1997, Sea–Land executed the aforementioned New York settlement agreement with OPEIU agreeing that a specified portion of the work at the gate would be performed by OPEIU's members. In other words, when Sea–Land entered the New York settlement agreement with OPEIU in April 1997, Sea–Land knew, but did not disclose to either OPEIU or the New York court, that such agreement was inconsistent with the March 4, 1997, Texas awards in favor of ILA.

### C. The Maersk Work

As anticipated, in July 1997, Sea–Land began to handle containers for Maersk. On July 24, 1997, OPEIU wrote to Sea–Land and alleged that Sea–Land had violated the settlement agreement by assigning OPEIU's work-slots for the Maersk work to ILA workers. OPEIU and Sea–Land then arranged to return to the New York arbitrator to arbitrate the distribution of the Maersk work. An arbitration hearing was scheduled before the New York arbitrator for September 17, 1997; as before, the hearing was not scheduled to include ILA.

### D. The Texas Petition to Confirm

On August 22, 1997, ILA petitioned in the Southern District of Texas to confirm its two Texas awards. In its answer, Sea–Land conceded that it was not in compliance with the first Texas award (regarding the pre-Maersk work at the gate), and asserted that it could not comply, because of the pre-existing New York judgment and settlement agreement. As to the second Texas award (regarding the Maersk work), Sea–Land alleged that it was presently in compliance, but that it nevertheless intended to go forward with the scheduled September 17, 1997, New York arbitration with OPEIU. Sea–Land also proffered that if the New York arbitrator ordered the Maersk work reassigned to OPEIU, then Sea–Land would comply with such an order.

### E. Joinder and Tripartite Arbitration

On September 12, 1997, the Texas court stayed the OPEIU–Sea–Land arbitration on the Maersk work (five days before that arbitration was scheduled to begin) on the ground that it could interfere with the Texas court's jurisdiction. In the same order, the Texas court directed Sea–Land, OPEIU, and ILA to submit a list of proposed arbitrators so that the entire matter could be referred to tripartite arbitration. OPEIU was at the same time joined in the Texas proceeding by an order pursuant to Fed.R.Civ.P. 19. OPEIU represented at oral argument before the New York court that it was the Texas court that, sua sponte, identified the need for tripartite arbitration and which, again sua sponte, ordered OPEIU into the case for the purpose of proceeding to tripartite arbitration.

On September 26, 1997, OPEIU moved to dismiss the Texas court proceeding for lack of personal and subject matter jurisdiction. Sea–Land opposed that motion, arguing that OPEIU was a necessary party and that tripartite arbitration was "clearly appropriate" to resolve the matter. On October 3, 1997, the Texas court denied the motion to dismiss, and on Octo-

ber 9, 1997, ordered all three parties to tripartite arbitration.

On January 7, 1998, the Texas arbitrator awarded all the disputed gate work to ILA. Notably, the tripartite format permitted consideration of matters expressly excluded from the New York arbitration, including the conflicting provisions of both CBAs, the industry custom on work assignments, and the employer's preference. All of those questions were resolved in favor of ILA and against OPEIU. On January 14, 1998, the Texas court confirmed the tripartite arbitration award. *ILA v. Sea–Land Serv. Inc.*, 991 F.Supp. 825 (S.D.Tex.1998).

Initially, the Texas court found that OPEIU had been properly joined as a necessary party because any resolution involving only one of the unions would be "incomplete and unjust" and could subject Sea–Land to inconsistent obligations. *Id.* at 827 (citing Fed R. Civ. P. 19(a)).

Second, the Texas court found that it did have authority to stay the OPEIU—Sea–Land arbitration and to order OPEIU to participate in tripartite arbitration. Focusing on the "pragmatic and efficient" solution of tripartite arbitration, the Texas court rejected OPEIU's argument that the order of tripartite arbitration was improper because OPEIU and ILA were not parties to the same CBA arbitration agreement. *Id.* at 828–29. On the merits, the Texas court confirmed the award. *Id.* at 829. Finally, the Texas court noted that it was "cognizant" of the New York court's final judgment, but "respectfully" noted that ILA was not a party to the New York judgment, and, "[t]he Court seriously questions the validity of dispute resolution when an indispensable party, for whatever reason, is absent." *Id.* OPEIU appealed from the Texas judgment, and that appeal is pending in the Fifth Circuit Court of Appeals.

F. *OPEIU Returns to the Southern District of New York to Enforce the New York Judgment*

On October 3, 1997, i.e., after it had been joined in the Texas litigation for the purposes of proceeding to tripartite arbitration but before tripartite arbitration had taken place, OPEIU made a Fed. R.Civ.P. 70 motion before the New York court to enforce the New York judgment.[2] *See* Fed.R.Civ.P. 70 ("If a judgment directs a party ... to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party ...").

In its opposition papers—submitted after the parties had been ordered to tripartite arbitration in Texas—Sea–Land alleged that it was in compliance with the New York judgment and settlement but noted that it was "obligated to participate in the tripartite arbitration" in Texas.

The New York court denied OPEIU's Rule 70 motion on May 5, 1998, i.e., five months after the Texas court entered its judgment confirming the tripartite award. *In re Arbitration Between OPEIU and Sea–Land Serv., Inc.*, 1998 WL 226160 (S.D.N.Y. May 5, 1998). The New York court found that the New York and Texas judgments conflicted, and that Sea–Land was not in compliance with the New York judgment. *Id.* at *3 n. 3. It then analyzed the issue of tripartite arbitration and "agree[d]" with the Texas court that tripartite arbitration was both permissible and a "pragmatic solution." *Id.* at *4. The New York court then held, "In deference to the tripartite arbitration award, confirmed by the Texas Court, and because it now appears that an indispensable party [ILA] was absent from the [New York] arbitration ... [OPEIU's] motion is denied in all respects." *Id.* (citation omitted).

**2.** It is unclear whether this motion was made before or after the Texas court denied OPEIU's motion to dismiss in the Texas action.

## II. DISCUSSION

The essence of the New York court's denial of OPEIU's motion was the finding that ILA was a necessary party to the initial arbitration, and that ILA's absence rendered continued enforcement of the judgment entered on that award in New York inequitable.[3] This ruling was tantamount to a holding that a change in circumstances (namely, the determination that ILA was a necessary party) rendered enforcement of the existing judgment unjust, and that the proper remedy from the start would have been to order tripartite arbitration rather than enter judgment on the bipartite award. *See Sea–Land,* 1998 WL 226160, at *4 ("[I]t now appears that an indispensable party was absent from the [New York] arbitration...."). OPEIU argues that it was entitled to the benefit of the judgment notwithstanding the changed circumstances, and that the New York court lacked the power to decline to enforce the judgment.

 We begin our analysis with *Emery Air Freight, Corp. v. International Bhd. of Teamsters, Local 295,* 185 F.3d 85 (2d Cir.1999), and we assume familiarity with that case. In light of *Emery,* it is now settled in this circuit that the district court has the power to order tripartite arbitration even absent the parties' consent to submit to tripartite arbitration, and even after a bipartite arbitration award has issued. *Id.* at 90–92.

One difference between this case and *Emery* is that a *judgment* was entered in this case confirming the initial bipartite award. *Cf. id.* at 87 (plaintiff complied with initial bipartite arbitration award without judicial intervention). We find that the entry of the judgment did not itself deprive the New York court of the power over its injunction, because judgments granting prospective injunctive relief are subject to the ongoing supervisory power of the court. *See* Fed.R.Civ.P. 60

(on motion, court may relieve a party from a final judgment for specified reasons); *United States v. Swift & Co.,* 286 U.S. 106, 114–15, 52 S.Ct. 460, 76 L.Ed. 999 (1932) ("A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need.... [A] court does not abdicate its power to revoke or modify its mandate, if satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong.") (citations omitted).

We perceive nothing in this determination that weakens principles of finality beyond the inroads already held acceptable by *Emery.* As we did in *Emery,* we rely on the "discretion and equitable instinct of the district court" to consider the concerns of finality when resolving jurisdictional labor disputes. *Emery* 185 F.3d at 92; *see Sierra Club v. United States Army Corps of Eng'rs,* 732 F.2d 253, 256–57 (2d Cir. 1984) (modification of injunction "involves a balance between the policies of *res judicata* and the right of a court to apply modified measures to changed circumstances"). To the extent that Sea–Land argues that the New York court could not reexamine its own judgment because it was *res judicata,* such argument is simply wrong in light of the existence of changed circumstances.

However, Sea–Land did not make a Rule 60(b) motion or otherwise seek relief from the New York judgment prior to OPEIU's Rule 70 motion. *See* Fed. R.Civ.P. 60(b) (procedure for obtaining relief from a judgment "shall be by motion as prescribed in these rules or by an independent action"). OPEIU argues that a party's opposition to a Rule 70 motion may not contest the underlying merits of the judgment that the movant seeks to enforce. Thus, OPEIU contends, under the existing procedural circumstances, the

---

**3.** OPEIU does not expressly concede the matter, but makes no meaningful effort to dispute the determination that ILA was a necessary party to the New York litigation. We treat the matter as conceded.

judgment was immune from attack, and "[o]nce the lower court found non-compliance, it was duty bound to enforce its Judgment." *Cf. Hook v. State of Ariz., Dep't of Corrections*, 972 F.2d 1012, 1014–17 (9th Cir.1992) (in response to plaintiffs' Rule 71 motion,[4] defendant's arguments on the merits of the injunction were not cognizable; defendant was "bound" by the judgment "until the district court issues an order otherwise under Rule 60(b)").

Given the exceptional nature of jurisdictional labor disputes, and the enhanced remedial power of courts to resolve such disputes, we need not determine whether the Federal Rules of Civil Procedure permitted the remedy the New York court provided. In *Columbia Broadcasting System, Inc. v. American Recording & Broadcasting Ass'n*, 414 F.2d 1326, 1328–29 (2d Cir.1969), we observed that jurisdictional labor disputes that arise under collective bargaining agreements are governed by a "new common law." *Id.* at 1328 (internal quotation omitted). *Emery* confirmed the vitality of these principles. *Emery*, 185 F.3d at 90–91. Thus, even assuming that the Federal Rules of Civil Procedure did not authorize the New York court to reach the merits of its judgment, we find that the common law governing jurisdictional labor disputes did. *Compare CBS*, 414 F.2d at 1329 n. 1 (in jurisdictional labor dispute, "developing common law of labor contracts" empowered district court to consolidate two arbitration proceedings without consideration of whether such consolidation was authorized by Fed.R.Civ.P. 42(a)) *with Glencore, Ltd. v. Schnitzer Steel Prods. Co.*, 189 F.3d 264, 267–68 (2d Cir.1999) (in general commercial dispute, district court lacked the power to consolidate bipartite arbitrations, or to hold a tripartite hearing, where neither the terms of the arbitration agreements nor the Federal Rules of Civil Procedure granted such power).

In sum, the New York court had the power to decline to enforce the judgment confirming an arbitration award because a change in circumstances had made clear that the dispute was a jurisdictional labor dispute, that tripartite arbitration was the proper and necessary vehicle to resolve the dispute, and, thus, that the prospective relief provided in the judgment was inequitable. *See Swift*, 286 U.S. at 114–15, 52 S.Ct. 460. Given the exceptional nature of jurisdictional labor disputes, the New York court had the authority to proceed as it did regardless of any defect created by Sea–Land's failure to affirmatively seek relief from the judgment. *See CBS*, 414 F.2d at 1329 n. 1. We see no meaningful distinction between the power of the court to order a tripartite arbitration in *Emery* and the power of the New York court sua sponte to defer to a tripartite arbitration in this case.

Our holding goes only to the power of the court. The fact that a court has the power to decline to enforce a judgment entered on a bipartite award does not eliminate the fact that the decision whether or not to do so remains a discretionary one. *See Emery*, 185 F.3d at 91 (when court has power to order tripartite arbitration, decision is discretionary; listing five factors for consideration); *Sierra Club*, 732 F.2d at 257 (modification of injunction is reviewed for abuse of discretion; when final injunction is at issue, inquiry is whether "there has been such a change in the circumstances as to make modification of the decree equitable").

On appeal, OPEIU contests only the power of the New York court. We are not asked to analyze the five factors set forth in *Emery* or otherwise to determine whether the New York court abused its discretion in declining to enforce the New York judgment and its appurtenant injunction. Consequently, as the ground raised

---

4. Fed.R.Civ.P. 71 provides, "When an order is made in favor of a person who is not a party to the action, that person may enforce obedi- ence to the order by the same process as if a party...."

for reversal is meritless, we affirm the order appealed from.

However, two points bear additional discussion. First, OPEIU complains that Sea–Land "did not see fit" to disclose that arbitration awards had been entered in favor of ILA at the time that Sea–Land entered the settlement agreement with OPEIU in New York. Although less than clear, OPEIU's contention seems to be that Sea–Land actually anticipated the need for tripartite arbitration when it entered the settlement agreement in New York, and thereby forfeited its right to obtain relief from the New York judgment. The extent to which Sea–Land anticipated the need for tripartite arbitration, and the extent to which such anticipation (if any) weighed in favor of enforcing the New York judgment, was a matter committed to the New York court's discretion. *Cf. Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 385, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992) (declining to adopt rule to prohibit modification if party anticipated changing conditions). While OPEIU complains generally about Sea–Land's nondisclosure, it does not, as noted, contend that the New York court abused its discretion in declining to enforce the judgment and injunction; thus, we need not consider the matter further. *See LoSacco v. City of Middletown,* 71 F.3d 88, 93 (2d Cir.1995) ("[W]e need not manufacture claims of error for an appellant. . . .").

Nevertheless, we note that the record does not establish that Sea–Land anticipated the need for tripartite arbitration. In its answer to ILA's petition to confirm the Texas arbitration awards, Sea–Land opposed confirmation on the ground that the Texas awards conflicted with the New York judgment and, potentially, with the outcome of the upcoming bipartite Maersk arbitration before the New York arbitrator. In opposing OPEIU's Rule 70 motion, Sea–Land argued that it was still in compliance with the New York judgment and settlement agreement. In sum, Sea–Land took the position that the Texas litigation could ultimately be resolved independent of, and consistent with, the New York litigation. The record does not establish that that position—however poorly considered—was frivolous or was adopted in bad faith. It was the Texas court, based on facts unknown to the New York court, that first determined that tripartite arbitration was necessary. This determination may thus be properly described as a change in circumstance that was not anticipated at the time the settlement agreement was entered.[5] Further, the record shows that the New York court considered Sea–Land's conduct during the litigation of this matter (including Sea–Land's decision not to disclose the Texas awards when it entered the New York settlement), as was proper.

Second, the Texas court's decision to disregard the New York judgment warrants comment. The issue of whether the Texas action constituted an impermissible collateral attack on the Southern District of New York judgment, or whether the Texas court erred in ordering tripartite arbitration, is not before us. Any perceived error committed by the Texas court should be raised in the appeal to the Fifth Circuit. What is relevant to our inquiry is whether an error committed by the Texas court affected the New York court's independent decision that continued enforcement of the New York judgment and injunction would be inequitable. OPEIU does not identify any such error.

For example, OPEIU argues that principles of *res judicata* prevented the Texas

5. Notably, there is no indication that OPEIU sought to include ILA in the New York litigation. The conditions of the New York arbitration—which prohibited the arbitrator from considering the ILA CBA—suggest that OPEIU, like Sea–Land, was in a position to consider whether a favorable award for OPEIU in New York might violate ILA's rights under its CBA. The exclusion of ILA from the New York arbitration thus suggests that OPEIU reached the same conclusion as Sea–Land, namely that the New York arbitration would not affect ILA's rights.

court from sending the parties to tripartite arbitration. It is difficult to conceive how *res judicata* would apply since the two proceedings involved both different parties and different issues (the New York arbitrator, for example, gave no consideration whatsoever to the ILA CBA). Even if correct, however, this argument would not be a basis for reversing the *New York* order from which OPEIU appeals. However flawed, the Texas litigation is relevant to this case only to the extent that it brought the need for tripartite arbitration to the attention of the New York court. Once that need became apparent, the New York court was empowered to act as it did.

## III. CONCLUSION

For the foregoing reasons, we affirm the order of the district court.